UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHESTER RYCHEL,**

    **Plaintiff,**

vs.                                  Case No. 8:04-CV-2346-T-26EAJ

**JO ANNE B. BARNHART,**

    **Commissioner of**
**Social Security,**

    **Defendant.**
_____/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) (1994), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Act.

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (citation omitted). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

In his application, Plaintiff alleges an onset of disability beginning September 14, 2001 due to severe osteoarthritis in his knees. (T 14, 189) Fifty-four years old at the time of the ALJ's decision, Plaintiff has a high school equivalency diploma (GED) and past relevant work experience as a customer service representative, forklift operator, and lineman helper. (T 14)

A hearing was held before the ALJ on May 14, 2003. (T 28) The ALJ found that Plaintiff had not engaged in substantial gainful

2

activity after his alleged onset date.  (T 18)  The ALJ determined that Plaintiff had an impairment or combination of impairments considered "severe," however those impairments did not meet or medically equal an impairment listed in the Listing of Impairments. (T 18)  Further, the ALJ found that Plaintiff's testimony that his impairments were disabling was only partially credible in light of Plaintiff sitting through the entire hearing without apparent distress, discrepancies between his assertions and the documentary record, and his medical history.  (T 16)

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a wide range of light work activity. (T 18) Specifically, the ALJ found that Plaintiff is able to perform light work activity by lifting 20 pounds; that he requires a sit/stand option with a frequent limitation for kneeling, clumbing and working at unprotected heights; and that he is able to perform routine taske in an environment where most tasks are completed in a seated position but which allows for occasional standing in an 8-hour day.  (T 16)

While concluding that Plaintiff's exertional limitations do not allow him to perform the full range of light work (and Plaintiff is unable to return to his former type of work), the ALJ noted there are a significant number of jobs in the national economy Plaintiff can perform, such as: cashier II, ticket seller, and bench assembler.  (T 18)  Plaintiff argues that the ALJ erred

by (1) rejecting Plaintiff's claims of disabling pain and other symptoms and (2) failing to properly assess Plaintiff's RFC.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**II.**

**A.**  Plaintiff argues that the ALJ erred by rejecting Plaintiff's claims of disabling pain and other symptoms because the ALJ did not consider whether there was objective medical evidence to confirm the severity of the alleged pain.

At the administrative hearing, Plaintiff testified that he stopped working on September 14, 2001 due to severe pain in his knees because he could no longer tolerate the prolonged sitting required in his job of customer service representative as he was unable to get up and stretch his legs without risking a reprimand from his supervisor. (T 33-34)

As the ALJ's decision reflects, Plaintiff injured both knees in a work-related accident in 1992. (T 15) Subsequently, he underwent arthroscopy with chondroplasty of the left knee in May 1993 and of the right knee in December 1996. (T 16)  In March 2003, Plaintiff had additional surgery on his left knee: arthroscopy, partial medial meniscectomy, partial lateral meniscectomy and three compartment chondroplasty. (T 15)

Plaintiff testified that although the most recent surgery on

4

his left knee had stopped the "catching or snapping" in that knee, he still has pain to the degree that "...it's hard to concentrate on anything." (T 40) Plaintiff stated that if he stands for more than fifteen minutes, the pain goes to his thighs and calves and causes cramping. (Id.) He further stated that he can walk only about fifteen minutes and that the pain is worse when his legs are in a bending position such as sitting. (T 42) He testified that he typically spends seven hours a day lying on his side with his legs bent slightly. (T 42-43)

Regarding pain medication, Plaintiff testified that prescription pain medication makes him drowsy and acts as a sedative; he takes that medication only when the pain is most severe, as when he has too much exertion such as grocery shopping. (T 43) However, Tylenol and Aleve do not seem to help. (T 41)

The Eleventh Circuit applies a three part "pain standard" when evaluating subjective complaints of pain. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). The claimant must produce (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the pain resulting from the medical condition or (3) evidence that the objectively determined medical condition is so severe that it can be reasonably expected to cause the alleged pain. Id. This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through

subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

The ALJ referred to this standard in evaluating Plaintiff's complaints of pain. (T 15) While finding that Plaintiff does have an underlying impairment that could give rise to symptoms such as pain, the ALJ rejected Plaintiff's testimony on credibility grounds. Among the evidence cited by the ALJ was (1) Plaintiff's appearance at the hearing (he did not use a cane and sat at the hearing without apparent distress);[1] (2) Plaintiff took only over-the-counter medication and used other pain medication infrequently because it made him sleepy; (3) Plaintiff denied doing part-time work but told a physician that he could not do a knee replacement because he had to continue working and Plaintiff also did odd jobs such as baby-sitting. (T 15-16)

---

[1] The 26-page hearing transcript reflects that the hearing commenced at 9:40 a.m. but it does not indicate when the hearing ended. (T 28-53) The ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing as long as the claimant's testimony is not discredited solely on that basis. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987)(citations omitted); but see Johns v. Bowen, 821 F.2d 551, 557 (11th Cir. 1987)("sit and squirm" jurisprudence disallowed by Eleventh Circuit). However, because Plaintiff does not challenge this finding by the ALJ, no further discussion of this issue is necessary; nonetheless, Plaintiff testified at one point during the hearing, that "...right now, my knees are hurting." (T 41)

While these findings may arguably satisfy the second alternate prong of the pain standard by assessing the second alternate prong of the pain standard, it is apparent that the ALJ failed to consider whether there is objective medical evidence confirming the severity of Plaintiff's pain. In his memorandum of law, Plaintiff cites to what he characterizes as objective medical evidence that the ALJ failed to analyze. (Dkt. 14 at 16-17) The Commissioner's memorandum of law fails to address this issue and focuses only on the evidence which was used to assess Plaintiff's credibility under the subjective prong of the pain standard. (Dkt. 15 at 6-7)

This evidence included an MRI taken by Raul B. Tallo, M.D. ("Dr. Tallo") indicating "severe osteoarthritis of the knee" with large spurs, a large subchondral cyst or geode, a large calcific loose body seen posterior to the knee, severely degenerated menisci with probably a degenerative tear in the posterior horn, and a probable ACL tear.  (T 187-188)  There is additional evidence in the record that F. Mark Goodwin, M.D. ("Dr. Goodwin") made operative findings of tri-compartmental osteoarthritis with grade II-IV chondramalacia throughout all three compartments and raw exposed bone in two compartments with very little cartilage remaining on the patella.  (T 199) Furthermore, Dr. Goodwin found that the posterior horn of the medial meniscus was badly degenerated, and there was a tear of the more anterior aspect of the lateral meniscus in an area where there was grade IV

chondromalacia of the femoral condyle. (T 199) Finally, Dr. Goodwin interpreted the x-rays of the right knee as "almost bone to bone." (T 196) This demonstrates a few examples of objective medical evidence that the ALJ failed to analyze in properly evaluating the objective prong of the pain standard.[2]

Because the ALJ failed to completely apply the correct legal pain standard in analyzing the Plaintiff's complaints of pain and other subjective symptoms, a remand is required for the Commissioner to evaluate any evidence of objective indicia of pain consistent with the Eleventh Circuit pain standard and to make appropriate findings.

**B.** Plaintiff additionally argues that the ALJ's RFC assessment finding Plaintiff could perform a wide range of light work was flawed because Plaintiff cannot perform substantially all of the requirements of light work. Instead, Plaintiff argues that the ALJ should have determined that his RFC category was at the sedentary level. The Commissioner responds that the ALJ found Plaintiff unable to perform the full range of light work and properly relied

---

[2] It is true that these records pre-date Plaintiff's March 2003 arthroscopic surgery on his left knee. However, even one week post-surgery, Dr. Goodwin stressed in a progress note dated March 31, 2003 that the surgery was only a temporary measure and that Plaintiff most likely would need a knee replacement one to two years later. Dr. Goodwin also noted that the "arthroscopy showed significant degenerative joint disease with a lot of bare bone spots." (T 202) The import of this evidence is for the Commissioner in the first instance, and the court cites this evidence only for illustrative purposes to explain why a remand is warranted for the Commissioner to make specific findings.

on testimony of a vocational expert in asking whether any jobs existed at the light level for a person with Plaintiff's RFC for a limited range of light work. In response to these questions, the VE answered in the affirmative and listed a number of "light work" jobs with a sit/stand option, frequent limitations for kneeling and climbing, and an environment where Plaintiff could perform routine tasks in a seated position allowing for occasional standing.

In light of Plaintiff's case being remanded on the first issue, the ALJ's findings may change on remand. Accordingly, it is unnecessary to determine the second issue: whether the ALJ's RFC assessment was flawed. Jackson v. Bowen, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986).

## **CONCLUSION**

While concluding that remand for further fact-finding is necessary due to errors of law at the administrative level, this court expresses no views as to what the outcome of the proceedings should be. At the reopened hearing, each party shall have the opportunity to submit additional evidence.

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) The decision of the Commissioner denying Plaintiff's benefits is **REVERSED**, and this case be remanded for further administrative proceedings consistent with the foregoing discussion; and

9

(2) The Clerk of Court enter final judgment pursuant to 42 U.S.C. § 405(g) and direct this case be closed as this is a "sentence four remand." See Shalala v. Schaefer, 509 U.S. 292, 303-04 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993).

**DONE AND ORDERED** in Tampa, Florida on this 31st day of December, 2005.

_____
ELIZABETH A JENKINS
United States Magistrate Judge